[No. B076636. Second Dist., Div. Seven. Oct. 28, 1993.]

BEVERLY HOSPITAL et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KATHRYN CASTANEDA, Real Party in Interest.

**COUNSEL**

Kenneth N. Mueller, Greg R. Bunch, Alan L. Rushfeldt, Kathryn S. M. Mosely, William Gitt, Irving H. Greines, Marc J. Poster and Sheila S. Kato for Petitioners.

No appearance for respondent.

David M. Harney, Thomas Kallay, Carl A. McMahan, Esner, Marylander, Zakheim & Higa, Stuart B. Esner and Billie Ann U. Higa for Real Party in Interest.

## OPINION

JOHNSON, J.—In this case we hold a mistrial, new trial or reversal of the judgment on appeal automatically restarts the time limitations on discovery. Thus, where a mistrial was declared, plaintiff's subsequent demand for exchange of expert witness information was timely because it was made more than 70 days before the date set for retrial.

### FACTS AND PROCEEDINGS BELOW

This is a medical malpractice action. The case was set for trial to commence on May 14, 1992. After this trial date was set, the parties engaged in a timely exchange of information concerning each other's expert witnesses pursuant to Code of Civil Procedure section 2034.[1]

The case was tried to a jury. The jury, however, was unable to reach a verdict after 17 days of deliberations. The trial court, finding the jury to be "hopelessly deadlocked" declared a mistrial. Following the mistrial, the court held a status conference on October 9, 1992, and scheduled another trial for January 6, 1993.

On October 26, 1992, more than 70 days before the date set for trial, plaintiff served defendants with a new demand for exchange of expert witness information. Plaintiff designated November 17, 1992, as the date for the exchange of information. On that date plaintiff served defendants with a list of the experts she intended to call at the forthcoming trial. The list included four witnesses previously designated as experts, deleted one witness from the prior list and added six new witnesses.

Defendants did not respond to plaintiff's demand for a new exchange of expert witnesses. Instead, they objected to the demand as untimely and sought a protective order from the trial court. Defendants argued that under

---

[1]All statutory references are to the Code of Civil Procedure.

section 2034, subdivision (b), the time for demanding an exchange of expert witness information is measured by reference to the "initial trial date." Because the "initial trial date" in this action was May 14, 1992, plaintiff's demand, served five months later, was untimely.

The trial court denied defendants' request for a protective order and defendants applied to this court for a writ of mandate or other appropriate relief. We issued an order to show cause. Following full briefing and oral argument, we have concluded the phrase "initial trial date" should be interpreted to refer to the first date set for each trial scheduled in the action, not to the first trial date set in the action. Therefore, the writ is denied.

## DISCUSSION

In California, the cutoff date for discovery is generally linked to "the date initially set for trial" or, as it is sometimes phrased, "the initial trial date." For example, section 2024, subdivision (a) provides in relevant part, "[A]ny party shall be entitled as a matter of right to complete discovery proceedings on or before the 30th day, and to have motions concerning discovery heard on or before the 15th day, before the date initially set for the trial of the action." Time limitations on discovery pertaining to expert witnesses are found in two sections of the Code of Civil Procedure. Section 2024, subdivision (d) provides: "Any party shall be entitled as a matter of right to complete discovery proceedings pertaining to a witness identified under Section 2034 on or before the 15th day . . . before the date initially set for the trial of the action." Section 2034, subdivision (b) provides: "Any party may make a demand for an exchange of information concerning expert trial witnesses without leave of court. A party shall make this demand no later than the 10th day after the initial trial date has been set, or 70 days before that trial date, whichever is closer to the trial date."

■ The issue before us is whether these statutory cutoff dates for discovery preclude the parties from conducting additional discovery following a mistrial, an order granting a new trial, or the reversal of a judgment on appeal.

Defendants contend an action can have more than one trial but it can have only one "initial trial date" and that is the *first* trial date set in the action.[2] (See, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group, rev. 1, 1992) ¶ 8:450, p. 8E-11.) By referring to the date "initially" set for trial or the "initial" trial date, the Legislature clearly

---

[2]The adjective "initial" means "Occurring at the very beginning; first." (American Heritage Dict. (2d college ed. 1982) p. 662.)

inferred subsequent, continued, new, rescheduled, or other "non-initial" trial dates might be set but the controlling date for purposes of discovery cut off is the initial, i.e., first trial date set, not a date which might be set later.

Defendants find support for their position in section 2024, subdivision (e), which provides the trial court may, upon a showing of good cause, "grant leave . . . to reopen discovery after a new trial date has been set," and in section 2034, subdivision (k)(1), which provides the court may, upon a showing of good cause, grant a party leave to augment its expert witness list. Defendants also point out the Legislature deliberately placed the word "initial" before "trial date" because it wanted to convey the message a continuance or postponement of the "trial date" does not automatically operate to reopen discovery. (*Roe* v. *Superior Court* (1990) 224 Cal.App.3d 642, 646 [273 Cal.Rptr. 745]; *Green* v. *Bristol Myers Co.* (1988) 206 Cal.App.3d 604, 609, fn. 5 [253 Cal.Rptr. 745]; Weil & Brown, *supra*, ¶ 8:450, p. 8E-11.)

Thus, as defendants see it, the Legislature has tied discovery cutoff dates to the first date set for trial of the case. However, to prevent any unfairness resulting from this rule, the Legislature has permitted discovery beyond the cutoff dates upon stipulation of the parties or a showing of good cause to the trial court. They conclude, therefore, if plaintiff had good cause to amend her list of expert witnesses following the order declaring a mistrial she should have filed a motion to do so under section 2034, subdivision (k). (Weil & Brown, *supra*, ¶ 8:451, p. 8E-11; cf. *Richaud* v. *Jennings* (1993) 16 Cal.App.4th 81, 90-91 [19 Cal.Rptr.2d 790].)

Plaintiff concedes defendants' interpretation of sections 2024 and 2034 is plausible but argues it is not the only permissible interpretation and certainly not the correct one. In fact, plaintiff contends, defendants' interpretation actually supports her position the time limits for discovery are reopened following a mistrial, order for new trial or reversal of the judgment on appeal.

Plaintiff contends each time an action is tried an "initial" trial date is set for that particular trial and this date controls the discovery cutoff for the trial to which it relates. Plaintiff argues a case does not necessarily have one single everlasting "initial" trial date but may have several "initial" trial dates, each one corresponding to a scheduled trial of the action.

Plaintiff finds support for her interpretation of the discovery statutes in their legislative history. Former rule 333 of the California Rules of Court

provided discovery was to be completed 30 days "before the date set for trial of the case." Under this rule it was unclear whether a continuance of the trial date automatically extended the discovery period. The Legislature resolved this ambiguity in the Discovery Act of 1986 by providing in section 2024, subdivision (a) discovery be completed "on or before the 30th day . . . before the date initially set for the trial of the action. . . . Except as provided in subdivision (e), a continuance or postponement of the trial date does not operate to reopen discovery proceedings." Subdivision (e) permits the trial court to grant leave "to reopen discovery after a new trial date has been set." (See Weil & Brown, *supra*, ¶ 8:450, p. 8E-11.) Section 2034, dealing with the time limit on demanding exchange of expert witness lists, was subsequently amended to conform to the language of section 2024. (1 Hogan, Modern Cal. Discovery (4th ed., 1993 pocket supp.) § 10.2, p. 54.)

Thus, as plaintiff sees it, defendants are correct in asserting the purpose of tying discovery cutoff dates to the "initial" trial date was to prevent a party from manipulating the discovery procedure by obtaining continuances of trial simply to conduct further discovery. But this purpose, plaintiff contends, has nothing to do with the situation where, as here, a mistrial occurs, or where a new trial is ordered or the judgment is reversed on appeal. In these situations there is no attempt to manipulate the discovery procedure by creating grounds for a mistrial, new trial or appellate reversal merely so that the party can engage in additional discovery. Therefore, there is no reason not to allow the parties to engage in further discovery within statutory time limits as measured by the initial date set for retrial of the action.

It appears the Legislature, in resolving one ambiguity, created another. "Initial trial date" could mean the first trial date set in the action or it could mean the first date set for any trial in the action. "Where a statute is theoretically capable of more than one construction we chose that which most comports with the intent of the Legislature." (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) The language in question should be construed in the context of the nature and purpose of the statute as a whole. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ The purposes of California's discovery statutes are well known. They are intended, among other things, to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate preparation and trial; to prevent delay; and to safeguard against surprise. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 376 [15

Cal.Rptr. 90, 364 P.2d 266].) We must construe the statutes' time limitations in a way which is consistent with the overall purposes of discovery cited above. (*Id.* at p. 371.)

The purpose of imposing a time limit on discovery is to expedite and facilitate trial preparation and to prevent delay. Without a cutoff date, the parties could tie up each other and the trial court in discovery and discovery disputes right up to the eve of trial or beyond. Furthermore, as defendants point out, to be effective the cutoff date must be firm or some litigants will manipulate the proceedings to avoid the cutoff date.

Our review of the legislative history of sections 2024 and 2034, as they relate to the cutoff of discovery, convinces us the intent of the phrase "initial trial date" was to make clear the postponement or continuance of a trial does not automatically operate to reopen discovery. As will be recalled, rule 333 proved unsatisfactory because it defined the cutoff date as 30 days "before the date of trial." Thus, litigants found they could extend the time for conducting discovery by obtaining continuances of the trial date. Section 2024 was drafted by the State Bar/Judicial Council Joint Commission on Discovery (Commission) and adopted by the Legislature as part of the Discovery Act of 1986. The Commission's Reporter's notes to section 2024 state in relevant part, "The first two sentences restate the provisions of . . . Rule 333, except that the cut-off date for discovery is established on the basis of the first date that is set for the trial of the case. The [third] sentence of the proposed subdivision carries out the Commission's conclusion that a continuance or postponement of the trial date should not automatically operate to re-open discovery." (Quoted in Hogan, *supra*, appen. D, p. 197.) There is no mention in the reporter's notes nor in any case or commentary we have found of an intent to prohibit additional discovery following a mistrial, order grant- ing new trial or reversal on appeal. So far as we can determine, this was never thought to be a problem by the courts, the Legislature or the legal community.

Moreover, we believe permitting additional discovery following a mistrial, order granting new trial or reversal on appeal is consistent with the overall purposes of the discovery rules to facilitate trial preparation, expedite trial and encourage settlement. Permitting additional discovery would not, as defendants contend, result in unnecessary expense and delay. To the contrary, because discovery follows a previous trial it is likely to be more focused, intelligent and efficient. Thus, the additional discovery is likely to lead to a more expeditious retrial and to increase the possibility of settlement. The present case provides a pertinent example. After weeks of trial

and 17 days of deliberation a mistrial had to be declared because the jury could not reach a verdict. This suggests weaknesses in the evidence on both sides. If the case is retried on the same evidence, the result may be the same. The costs of trial of this action are enormous compared to the costs of deposing new expert witnesses. Furthermore, depositions of plaintiff's new experts may lead both sides to rethink their positions regarding settlement.

In considering the costs and delays involved in permitting automatic reopening of discovery we must also bear in mind the costs and delays inherent in requiring a party to seek leave of court in order to conduct additional discovery. This procedure necessarily involves drafting and filing motions and opposition, court hearings and, almost inevitably, a writ petition from the losing side. As Justice Epstein has pointed out, one of the purposes of the Civil Discovery Act of 1986 was to reduce the voluminous litigation generated by the existing law. (Epstein, *The Civil Discovery Act of 1986* (Sept. 1987) 10 L.A. Lawyer 19.) Adopting defendants' interpretation of the new statutes would plunge the trial and appellate courts back into a sea of discovery disputes when their dockets are already at flood stage.

We find no merit in defendants' remaining two arguments. Defendants contend reopening discovery after a mistrial would conflict with section 616 which provides after a mistrial ". . . the action may be again tried immediately." Despite the recent adoption of trial court delay reduction rules, we believe it extremely unlikely a court would order the case retried "immediately." In any event, in the rare instance where a court schedules a new trial before a party has had an opportunity to complete additional discovery the party may move for relief from the time limits under sections 2024 and 3034 just as in any other case. Finally, defendants contend even if each scheduled trial of an action has its own "initial" trial date, the date of May 14, 1992, remains the initial trial date in this action because the trial scheduled for that date was never completed. A mistrial, defendants contend, is equivalent to no trial; it is a nugatory trial. (*Estate of Bartholomae* (1968) 261 Cal.App.2d 839, 842 [68 Cal.Rptr. 332].) But, because an order granting a motion for mistrial is not appealable (*ibid.*), it does not follow there was no trial for purposes of computing discovery cutoff dates. Defendants are comparing apples and oranges. For the reasons discussed above, we see no rational distinction between a mistrial, order granting new trial and a reversal on appeal for purposes of restarting the discovery clock.[3]

---

[3]In *Guzman* v. *Superior Court, ante,* page 705 [23 Cal.Rptr.2d 585], we hold a party may designate new expert witnesses when the trial court orders a new trial on damages

## Disposition

The order to show cause is discharged and the writ is denied.

Lillie, P. J., and Woods (Fred), J., concurred.

Petitioners' application for review by the Supreme Court was denied January 13, 1994. Baxter, J., was of the opinion that the application should be granted.