Opinion
MOSK, J.
Code of Civil Procedure section 2024, subdivision (a), provides that the cutoff date for completion of discovery proceedings is 15 days *247 “before the date initially set for the trial of the action”; continuance or postponement of that initial trial date does not reopen the time for discovery.
We granted review in this matter to resolve a conflict in our Courts of Appeal concerning application of the provision after a mistrial, an order granting a new trial, or remand for a new trial after reversal of a judgment on appeal. Beverly Hospital v. Superior Court (1993) 19 Cal.App.4th 1289 [24 Cal.Rptr.2d 238] held that, in such cases, discovery is reopened and the cutoff date is calculated based on the date initially set for the new trial. In the present matter, the Court of Appeal refused to follow Beverly Hospital, holding that, in such cases, the discovery cutoff must be calculated based on the initial date set for trial of the original action. It concluded that no additional discovery for the purposes of the new trial is permitted without leave of the trial court, based on a showing of good cause.
As will appear, we conclude that Beverly Hospital is correct: in the case of a mistrial, order granting a new trial, or remand for a new trial after reversal of a judgment on appeal, the last date for completing discovery is 15 days before the date initially set for the new trial of the action. Accordingly, we reverse the judgment of the Court of Appeal herein.
I
The factual and procedural background of this matter is as follows.
Fairmont Insurance Company (hereafter Fairmont) issued a policy of workers’ compensation insurance to real parties in interest Ken Stendell and Ken Stendell Construction, Inc. (hereafter Stendell), for the period of February 6, 1987, to January 1, 1988.
On December 9, 1987, an employee of Stendell was injured during the course of employment; the following month, he filed an application for workers’ compensation benefits. The application was served on Fairmont, but not Stendell.
In April 1988, and again in July 1988, the law firm of Tobin, Lucks & Goldman (hereafter the Tobin firm) appeared in the workers’ compensation proceedings as attorneys for both Fairmont and Stendell. Thereafter, it took the position that the policy had been canceled for failure to pay an increased premium and it no longer represented Stendell.
In September 1988, the workers’ compensation judge held a hearing on the coverage issue. Stendell had not been served with notice of the hearing. *248 The Tobin firm appeared for Fairmont; there was no appearance for Stendell. The matter was taken under submission.
In November 1988, the workers’ compensation judge sent a letter, together with minutes of the hearing and a summary of evidence presented, to all parties, including Stendell. The letter acknowledged that Stendell had not been served with, notice and stated that the case would be submitted on the present record for decision on the issue of insurance coverage unless good cause to the contrary was shown within 15 days.
Stendell did not respond to the letter, instead commencing the underlying bad faith insurance action against Fairmont. In January 1989, the workers’ compensation judge ruled that Fairmont was not Stendell’s workers’ compensation carrier at the time of the injury and dismissed Fairmont from the workers’ compensation proceedings.
Fairmont answered the complaint in this matter in February 1989. In September 1992, the superior court granted leave to amend the answer to assert res judicata and collateral estoppel as affirmative defenses.
Trial began in February 1993. By stipulation of the parties, the defenses of res judicata and collateral estoppel were bifurcated and tried first. The superior court ruled that the action against Fairmont was barred by rulings of the workers’ compensation judge and entered judgment in favor of Fairmont. The Court of Appeal reversed, holding that the superior court action could proceed.
Thereafter, Stendell served discovery requests on Fairmont, including requests for production of documents, form interrogatories, specially prepared interrogatories, and requests for admissions. The requests involved basic questions, including whether Fairmont is owned or controlled by another entity, when it was licensed to do business in California, and whether Stendell’s policy was ineffective on the date of the loss. No previous discovery demands had been propounded.
Fairmont objected to the discovery as untimely pursuant to Code of Civil Procedure section 2024, subdivision (a). Stendell moved to compel, citing Beverly Hospital v. Superior Court, supra, 19 Cal.App.4th 1289, to the effect that discovery was reopened, subject to a new cutoff date based on the initial date set for the new trial. In the alternative, it sought leave to reopen discovery on issues that would be the subject of the retrial and urged that such discovery would not prevent the case from going to trial on the date set. The superior court granted the motion to compel, ruling that “the Beverly case ... is binding on this Court.”
*249 The Court of Appeal reversed. It declined to follow the holding in Beverly Hospital that the phrase “initial trial date” refers to the first date set for each trial scheduled in the action for the purpose of calculating the discovery cutoff. (Beverly Hospital v. Superior Court, supra, 19 Cal.App.4th at p. 1292.) Instead, it determined that the cutoff is based on the date established by the original trial setting, regardless whether a new trial date is set after a reversal on appeal, as opposed to a continuance or postponement, although “[i]n the proper case, in response to a motion, the court can allow further discovery when it is justified.” A party requesting discovery in such instances must carry the burden of establishing good cause, in a motion to the trial court, by pointing to some issue or circumstance that did not exist before trial.
The Court of Appeal issued a peremptory writ directing the superior court to set aside its order requiring responses to Stendell’s discovery requests and enter a new order denying the motion to compel. It noted that the motion could be renewed if Stendell could establish good cause for additional discovery.
We granted review; we now reverse.
II
Code of Civil Procedure section 2024, subdivision (a), provides that, with exceptions not applicable here, “any party shall be entitled as a matter of right to complete discovery proceedings on or before the 30th day, and to have motions concerning discovery heard on or before the 15th day, before the date initially set for the trial of the action.” Except as expressly provided in subdivision (e), “a continuance or postponement of the trial date does not operate to reopen discovery proceedings.” (Code Civ. Proc., § 2024, subd. (a).)
Under the exception in Code of Civil Procedure section 2024, subdivision (e), to the rule that a continuance or postponement does not operate to reopen discovery, the statute provides that the time for discovery after such continuance or postponement is extended only under limited circumstances. “On a motion of any party, the court may grant leave to complete discovery proceedings, or to have a motion concerning discovery heard, closer to the initial trial date, or to reopen discovery after a new trial date has been set.” (Ibid.) In context, the “new trial date” referred to in subdivision (e) is the date set after a continuance or postponement. (See Code Civ. Proc., § 2024, subd. (a).) In considering such a motion, “the court shall take into consideration any matter relevant to the leave requested,” including (1) the necessity *250 and the reasons for the discovery, (2) the diligence, or lack thereof, of the party seeking relief, (3) the likelihood that permitting the discovery will delay the trial or otherwise interfere with the trial calendar, or will result in prejudice to any party, and (4) the length of time that has elapsed between any date previously set and the date presently set, for the trial of the action. (Id., subd. (e).) In addition, although discovery as of right is precluded after the cutoff, the parties may agree to extend the time for completion of discovery proceedings or to reopen discovery after a new date for trial of the action has been set. (Id., subd. (f).)
In the context of an action that has not yet proceeded to trial or otherwise resulted in a dispositive judgment, the phrase “date initially set for the trial of the action” (Code Civ. Proc., § 2024, subd. (a)) is unambiguous. In such instance, it plainly refers to the first date set for trial of the action. Thus, the statute expressly states that continuance or postponement of that date will not operate to reopen discovery. (Ibid.)
In the context of an action that has been set for a new trial after a mistrial, an order granting a new trial, or remand for a new trial after appellate reversal of a judgment, the meaning of the phrase “before the date initially set for trial of the action” is less clear. Does the statute refer to the “date initially set for trial of the action” by the court scheduling the date for the new trial, as Beverly Hospital holds? Or does it refer to “the date initially set for the trial of the original action,” without regard to the date set for the new trial, as the Court of Appeal herein held.
The Court of Appeal relied exclusively on a dictionary definition of the word “initially” as meaning “at the beginning; at first,” concluding that it necessarily referred to the original trial date for the action. (Webster's New World Dict. (3d college ed. 1988) p. 695.) The dictionary definition, however, does not resolve the question. As Beverly Hospital observed, although it is plausible to construe the statute as referring to the “first” or “beginning” date set for the original trial, it is also plausible, and more in accord with the plain language of the statute, to construe the statute as also referring to the “first” or “beginning” date set for the actual trial scheduled in the action after a mistrial, an order granting a new trial, or remand for a new trial after reversal on appeal. (Beverly Hospital v. Superior Court, supra, 19 Cal.App.4th at pp. 1291, 1293-1294.) Each time an action is tried, the court sets an “initial” (i.e., “first” or “beginning”) date for the actual trial, and that date controls the discovery cutoff for the trial to which it relates. (Id. at p. 1293.) A case does not have one everlasting “initial” trial date, but may have a new “initial” trial date corresponding to a scheduled retrial or new trial of the action. (Ibid.) Thus, after reversal “the time clock for the ‘initial trial *251 date’ under the Discovery Act is reset.” (Province v. Center for Women's Health & Family Birth (1993) 20 Cal.App.4th 1673, 1684 [25 Cal.Rptr.2d 667], disapproved on another ground in Heller v. Norcal Mutual Ins. Co. (1994) 8 Cal.4th 30, 41 [32 Cal.Rptr.2d 200, 876 P.2d 999].)
Beverly Hospital’s construction is also more consistent with the language of the statute as a whole, which states only that, except as provided in subdivision (e), “a continuance or postponement of the trial date does not operate to reopen discovery proceedings” (Code Civ. Proc., § 2024, subd. (a), italics added) and does not also expressly limit discovery following an order granting a new trial, a mistrial, or a remand for a new trial after reversal on appeal. It is also consistent with the legislative history of the provision and the Civil Discovery Act of 1986 (hereafter Discovery Act) of which it is part, which indicate that the purpose of the statute was to eliminate a source of discovery abuse and unnecessary trial delays caused by parties seeking continuances or postponements of trial for the sole purpose of extending the time for discovery.
Previously, under former rule 333 of the California Rules of Court, the discovery cutoff date was 30 days “before the date of trial.” The time for discovery could be extended by the parties whenever they obtained a continuance or postponement of the trial. Code of Civil Procedure section 2024, subdivision (a), which was proposed by the State Bar/Judicial Council Joint Commission on Discovery and adopted by the Legislature as part of the Discovery Act, restates the former rule “except that the cut-off date for discovery is established on the basis of the first date that is set for the trial of the case. The second sentence of the proposed subdivision carries out the Commission’s conclusion that a continuance or postponement of the trial date should not automatically operate to re-open discovery.” (State Bar/ Judicial Council J. Com. on Discovery, Proposed Cal. Civil Discovery Act of 1986, and Reporter's Notes (Jan. 1986) p. 25.)
Summarizing the change under Discovery Act, Justice Norman L. Epstein, then a superior court judge for Los Angeles County, described Code of Civil Procedure section 2024, subdivision (a), as “different from a widespread understanding about the [former] law. It is now clear that the cut-off dates count back from the first date set for trial; a postponement of the trial date does not extend or reopen discovery, unless the court orders otherwise on motion.” (Epstein, The Civil Discovery Act of 1986 (Sept. 1987) 10 L.A. Lawyer 18, 22.) As Beverly Hospital explains: “The purpose of imposing a time limit on discovery is to expedite and facilitate trial preparation and to prevent delay. Without a cutoff date, the parties could tie up each other and the trial court in discovery and discovery disputes right up to the eve of trial *252 and beyond. Furthermore, . . . to be effective the cutoff date must be firm or some litigants will manipulate the proceedings to avoid the cutoff date.” (Beverly Hospital v. Superior Court, supra, 19 Cal.App.4th at p. 1295.)
The Legislature drafted Code of Civil Procedure section 2024, subdivisions (a) and (e), in view of a situation involving only a single “initial” trial date. The problem it addressed, i.e., intentional manipulation of the trial date by way of continuances and postponements in order to extend the time for discovery, was apparently a frequent cause of inefficiency and unnecessary delays. The same problem does not arise, however, in the relatively unusual situation when a new trial is ordered—i.e., following an order granting a new trial, a mistrial, or remand for a new trial after reversal of a judgment on appeal—for the simple reason that parties are unlikely to manipulate the discovery procedure by creating grounds for a new trial, mistrial, or appellate reversal merely in order to extend the time for discovery. Moreover, unlike a continuance or postponement that only delays the onset of a trial, a new trial begins trial proceedings anew, “ ‘as though no trial had ever been had . . . .’ ” (Guzman v. Superior Court (1993) 19 Cal.App.4th 705, 707 [23 Cal.Rptr.2d 585].) Accordingly, there is thus no compelling basis, consistent with the legislative intent, not to allow the parties to engage in additional discovery within the statutory time limits as measured by the date set for retrial.
Nor is limiting the opportunity for discovery in the case of a new trial consistent with the statutes governing the computation of the time within which a new trial must be brought to action. Thus, Code of Civil Procedure section 583.320, subdivision (a)(3), provides for a new trial within three years after reversal on appeal; other subdivisions of the statute provide for the same time period for a new trial in the event of a reversal on appeal or the granting of a motion for a new trial. (Id., subd. (a)(1) [after mistrial] and (2) [after granting of new trial].) Such a lengthy time frame readily accommodates—and, indeed, would appear to contemplate—additional discovery by the parties. It would, on the other hand, be detrimental to efficient and effective retrial, as well as to opportunities for settlement, to impose a presumption against all further discovery during that three-year period.[1]
Indeed, requiring the parties to seek leave for any additional discovery in the case of a new trial would run counter to the principal aims of the Discovery Act, i.e., promoting discovery by permitting parties to fully *253 inform themselves of the facts, expediting efficient trial preparation, and reducing time-consuming and costly litigation over discovery disputes. In the typical case, when a new trial is required, the nature and scope of the issues will have been affected, requiring substantial investigation of new points or issues that were not adequately addressed in the original proceedings. The parties are afforded a trial de novo, along with “ ‘the right to introduce any evidence on the issue involved, not only the evidence introduced at the prior trial but also any additional and new evidence.’ ” (Guzman v. Superior Court, supra, 19 Cal.4th at p. 708.) Reopening discovery may serve to clarify facts and eliminate gaps in the evidence that resulted in the need for a new trial in the first place. Particularly in the case of a new trial following a dispositive judgment, e.g., on a demurrer or summary judgment, that was entered before the initial cutoff date for discovery, there will have been little or no opportunity for full discovery of facts involving issues or defenses that must now be addressed and litigated by the parties. For example, a party unsuccessfully opposing an early motion for summary judgment based on the statute of limitations, later reversed on appeal, is unlikely to have had sufficient time to complete discovery on the merits before the motion was granted.
Without an opportunity for discovery as of right, parties would face substantial barriers to effective trial preparation, with results inimical to the overall purpose of the discovery statutes to reduce litigation costs, expedite trials, avoid surprise, and encourage settlement. In virtually every case, parties would be required to seek court approval and demonstrate good cause for any discovery requests. Because of the presumption against permitting discovery after the cutoff and the mandatory sanctions imposed under the statute, such requests are likely to be routinely disputed, occasioning delays and necessitating court intervention regarding even the most pro forma discovery requests.[2]
A central purpose of the Discovery Act was to keep the trial courts out of the business of refereeing day-to-day discovery by requiring parties to *254 conduct discovery and resolve disputes with minimal judicial involvement. As Justice Epstein explained, one of the “running themes” of the Discovery Act was to avoid delays and reduce the judicial costs of litigating discovery disputes. (Epstein, The Civil Discovery Act of 1986, supra, 10 L.A. Lawyer at p. 21.)[3] Like the Court of Appeal in Beverly Hospital, we are disinclined to adopt a construction of the discovery provisions that “would plunge the trial and appellate courts back into a sea of discovery disputes when their dockets are already at flood stage.” (Beverly Hospital v. Superior Court, supra, 19 Cal.App.4th at p. 1296.)
Nor was the Court of Appeal herein correct in suggesting that reopening discovery would inevitably be burdensome or duplicative for the parties. In this matter, for example, it appears that no discovery on the issues presented for retrial has been conducted. Stendell seeks limited responses to basic discovery requests, such as questions regarding the ownership of Fairmont and whether it is licensed to do business in California. Fairmont has not objected that the discovery sought is unduly burdensome, or oppressive— just that it is untimely pursuant to Code of Civil Procedure section 2024, subdivision (a). A presumption against further discovery would ill serve the expeditious resolution of this case, either by pretrial settlement or trial on the merits.
Nor would discovery in the event of a new trial be unlimited. In the case of a new trial, as in the case of an original trial, the Discovery Act imposes strict limits on the extent of permissible discovery. Thus, a natural person may be deposed only once during the run of the litigation. (Code Civ. Proc., § 2025, subd. (t).) Specially prepared interrogatories are subject to strict formatting requirements, including the elimination of subparts, and are limited to 35. (Id.., § 2030, subd. (c)(1) [“no party shall, as a matter of right, propound to any other party more than 35 specially prepared interrogatories”].) Requests for admission are also limited to 35. (Id., § 2033, subd. (c)(1) [“No party shall request, as a matter of right, that any other party admit more than 35 matters that do not relate to the genuineness of documents.”].) In addition, the court may restrict the frequency or extent of discovery if it is unreasonably cumulative or duplicative or it is unduly burdensome or expensive. (Id., § 2019, subd. (b).)
*255 In the absence of any abuse of the discovery procedures, we discern no reason consistent with the legislative intent underlying the Discovery Act to require parties preparing for a new trial to draft and file discovery motions to show good cause before they can make discovery requests. Permitting parties to conduct discovery as of right will not prevent the superior court from setting a prompt and realistic date for retrial or preventing actual discovery abuse. By contrast, requiring the superior court and the appellate courts to engage in the costly and time-consuming task of overseeing the minutiae of discovery between parties will only increase the opportunities for unnecessary delays and gamesmanship.
Of course, a party objecting to particular discovery requests, e.g., as unduly burdensome or oppressive, may seek a protective order. (See, e.g., Code Civ. Proc., § 2025, subd. (i) [protective order before, during, or after deposition]; id., § 2030, subd. (e) [protective order when interrogatories have been propounded]; id. § 2031, subd. (f) [protective order when inspection of documents, tangible things, or places has been demanded]; id., § 2033, subd. (e) [protective order when requests for admission have been made].) In such case, the burden is on the party seeking the protective order to show good cause for whatever order is sought. (Goodman v. Citizens Life & Cas. Ins. Co. (1967) 253 Cal.App.2d 807, 819 [61 Cal.Rptr. 682].)
Or a party may object to a particular discovery request, placing the burden on the party seeking discovery to enforce discovery through a motion to compel. (See, e.g., Code Civ. Proc., § 2025, subd. (o) [motion to compel deposition testimony]; id., § 2030, subd. (l) [motion to compel further response to interrogatories]; id., § 2031, subd. (m) [motion to compel further response to requests for inspection]; id., § 2033, subd. (l) [motion to compel further response to request for admissions]; see also Coy v. Superior Court (1962) 58 Cal.2d 210, 220-221 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678] [if a timely motion to compel has been filed, the burden is on responding party to justify any objection].) These statutes, which provide the ground rules for discovery in the original trial of an action, also offer ample protection from oppressive manipulation of the discovery process in the event of a new trial.
III
For the foregoing reasons, we reverse the judgment of the Court of Appeal.
George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

We note that the Legislature has not amended subdivision (a) or (e) of Code of Civil Procedure section 2024 in the six years since Beverly Hospital v. Superior Court, supra, 19 Cal.App.4th 1289, was decided; nor are we aware that the rule under Beverly Hospital has resulted in discovery abuse or delays in the trial courts.

At oral argument, Fairmont suggested that reopening discovery might actually discourage settlement because parties might prefer to “wait and see” what “turns up” in discovery. We disagree; fair resolution of an action through pretrial settlement is best encouraged by permitting parties to learn as much as possible about the strengths and weaknesses of the case on the merits. As discussed, one of the chief aims of the Discovery Act was to eliminate surprise, both in order to promote settlement and in the interest of efficient trials. Fairmont also suggests that reopening discovery in this matter will only serve to discourage diligent discovery in the first instance. There would appear, however, to be little incentive for parties to delay discovery in reliance on the unlikely event that a new trial will be ordered, there will be a mistrial, or an adverse judgment will be reversed on appeal, permitting discovery to be reopened. Of course, a party prejudiced by undue discovery delays can seek a protective order on that ground.

Thus, before parties may seek assistance from the court to resolve disputes or extend discovery, they must meet and confer. Moreover, the trial court “shall” impose monetary sanctions against a party that unsuccessfully makes or opposes a motion involving discovery “unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.” (Code Civ. Proc., § 2024, subd. (e).) As Justice Epstein explains: “The result is supposed to be that sanctions will be awarded in far more cases than before. And that, in turn, is supposed to encourage parties and their counsel to cooperate with discovery and avoid unnecessary court proceedings.” (Epstein, The Civil Discovery Act of 1986, supra, 10 L.A. Lawyer at p. 21.)