Filed 1/21/14  P. v. Miami Nation Enterprises CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>Miami Nation Enterprises et al.,<br><br>     Defendants and Respondents. | B236547<br><br>(Los Angeles County<br>Super. Ct. No. BC373536) |

APPEAL from an order the Superior Court of Los Angeles County, Yvette Palazuelos, Judge.  Affirmed.

Uche L. Enenwali, Senior Corporations Counsel, Alan S. Weinger and Mary Ann Smith, Deputy Commissioners, California Corporations Counsel, for Plaintiff and Appellant.

Fredericks Peebles & Morgan and John Nyhan for, MNE and SFS, Inc., Defendants and Respondents.

_____

The Commissioner of the California Department of Corporations (Commissioner),[1] on behalf of the People of the State of California, sued Ameriloan, United Cash Loans, US Fast Cash, Preferred Cash and One Click Cash for injunctive relief, restitution and civil penalties, alleging they were providing short-term, payday loans over the Internet to California residents in violation of several provisions of the California Deferred Deposit Transaction Law (DDTL) (Fin. Code, § 2300 et seq.). Miami Nation Enterprises (MNE), the economic development authority of the Miami Tribe of Oklahoma, a federally recognized Indian tribe, and SFS, Inc., a corporation wholly owned by the Santee Sioux Nation, also a federally recognized Indian tribe, specially appeared and moved to quash service of summons and to dismiss the complaint on the ground the lending businesses named as defendants were simply trade names used by the two tribal entities and, as wholly owned and controlled entities of their respective tribes operating on behalf of the tribes, they were protected from this state enforcement action under the doctrine of tribal sovereign immunity.

During the course of this litigation on the issue of subject matter jurisdiction, the trial court imposed $34,437.50 in discovery sanctions against the Commissioner after the court denied in substantial part her motion to compel further responses to a second set of requests for production of documents from MNE and SFS. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In *People v. MNE* (Jan. 21, 2014, B242644) ___ Cal.App.4th ___ (*MNE*), filed concurrently with this decision, we affirm the trial court's order dismissing the action against MNE and SFS under the doctrine of tribal sovereign immunity. Because a relatively complete factual and procedural background of the lawsuit, including a comprehensive discussion of our earlier decision in *Ameriloan v. Superior Court* (2008)

---

[1] Effective July 1, 2013 the Department of Corporations and Department of Financial Institutions combined and became the Department of Business Oversight within the Business, Consumer Services and Housing Agency pursuant to the Governor's Reorganization Plan (G.R.P.) No. 2 of 2012. (See Gov. Code, §§ 12080.2, 12080.5.) The Corporations Commissioner is now the Commissioner of Business Oversight.

169 Cal.App.4th 81 (*Ameriloan*), is provided in that opinion, we limit the discussion here to the parties' discovery disputes and the resulting sanctions order.

In *Ameriloan, supra*, 169 Cal.App.4th 81, we held, to decide whether the tribal entities operating through the named payday loan companies are entitled to the benefits of tribal sovereign immunity, the trial court "must first determine whether those entities, in fact, are acting on behalf of federally recognized Indian tribes." (*Id.* at p. 97.) In light of the trial court's failure to make findings pertinent to the required "arm-of-the-tribe" analysis, we directed it to conduct a new evidentiary hearing and to consider whether the two tribal entities are sufficiently related to their respective tribes to be entitled to the protection of tribal sovereign immunity. "To this end, the court should consider the criteria expressed by the Courts of Appeal in *Trudgeon* [*v. Fantasy Springs Casino* (1999)] 71 Cal.App.4th [632,] 638 [citation] and [*Redding*] *Rancheria* [*v. Superior Court* (2001)] 88 Cal.App.4th [384,] 389, including whether the tribe and the entities are closely linked in governing structure and characteristics and whether federal policies intended to promote Indian tribal autonomy are furthered by extension of immunity to the business entity." (*Ameriloan*, at p. 98.) In response to the Commissioner's request to be permitted discovery into the assertion that profits from the payday loan operations benefit the two tribes that created MNE and SFS, we observed, "we see no reason why limited discovery, directed solely to matters affecting the trial court's subject matter jurisdiction, should impact the payday loan companies' special appearance . . . ." (*Id.* at p. 98.) Nonetheless, because no issue relating to discovery was raised in the petition for writ of mandate, we made no express ruling on the permissible scope of any discovery when the matter returned to the trial court. (*Id.* at pp. 98-99.)

1. *The Commissioner's First Set of Discovery Requests and Business Records Subpoenas*

On January 26, 2009, shortly after we filed our decision in *Ameriloan*, the Commissioner served discovery demands on MNE and SFS containing 91 requests for production of documents, 31 requests for admissions and form interrogatories. MNE and

3

SFS served responses and objections. The Commissioner thereafter moved to compel further responses.

The court on September 15, 2009 granted in part and denied in part the motion to compel production of documents. After reviewing our observations about limited discovery directed to the necessary arm-of-the-tribe analysis, the court found the categories described in a large majority of the document requests were overbroad and thus necessarily sought a great deal of irrelevant information; several requests sought wholesale production of sensitive financial documents without sufficiently establishing good cause or demonstrating the information could not be obtained in a less intrusive manner; and a number of the others concerned the allegedly unlawful conduct at issue in the complaint but were irrelevant to the jurisdictional analysis. For example, the Commissioner sought documents "evidencing disposition of all revenues generated by Defendants and tribes" and "documents for all loans made to California consumers, as well as collection efforts." However, because persuasive arguments had been presented by both sides in connection with the motions to compel, the court determined sanctions were not warranted under Code of Civil Procedure section 2031.310, subdivision (h).[2]

The court also granted in part and denied in part the motions to compel further responses to the Commissioner's form interrogatories and requests for admissions. With respect to the interrogatories, the court ordered MNE and SFS to provide substantive information regarding their insurance policies, crediting the Commissioner's argument it may be probative of ownership and control of the cash-advance businesses. The court also ordered substantive responses to requests for admission concerning how the specially appearing defendants are managed and what happens to the profits from their business operations. The court ruled, "[T]he facts are probative of how Defendants are run, which goes to the question of how connected Defendants are with the tribal entities. Although no single Request for Admission seeks admission that would be dispositive of the jurisdictional issue, taken together, they may yield evidence that is probative of

---

[2] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

4

whether Defendants are entitled to claim protections of tribal sovereign immunity." As with the motion to compel production of documents, the court found the parties had acted with substantial justification and declined to award sanctions to either side.

Several months earlier, on April 6, 2009, the court had granted MNE and SFS's motion to quash a business records subpoena to U.S. Bank that sought "nearly all of Ameriloan's bank records" on the ground it was overbroad and sought information beyond the permissible scope of limited, jurisdictional discovery. The court specifically stated "a narrowly tailored subpoena, however, may pass muster." The Commissioner served a second subpoena on U.S. Bank. A second motion to quash was denied as to three specifically defined items[3] but granted as to the remaining three broad categories seeking all monthly account statements, all deposit slips and items credited to the account and all withdrawal items including cancelled checks for a three-year period. In its July 2, 2009 order the court explained the Commissioner "should be permitted to adduce evidence in opposition to the motion [to quash service and dismiss the complaint] that shows that Defendants are independent from the tribal entity, and fail to serve tribal interests," and ruled "[t]he instant subpoena is far more narrowly tailored to meet this objective than the subpoena previously served. However, it is still overbroad to the extent that it seeks all account statements, deposits, and withdrawals."

2. *Appointment of a Discovery Referee*

In light of the ongoing discovery disputes and pursuant to the parties' stipulation under section 639, on February 10, 2010 the trial court appointed retired superior court judge Dzintra Janavs as a discovery referee. The appointment order directed the referee to resolve "any and all issues and disputes arising from discovery in this litigation," including issues concerning the protective order permitting designation of documents and

---

[3] The court permitted enforcement of the subpoena to the extent it sought the signature card reflecting the individuals authorized to sign the account; any credit or loan applications pertaining to the account for calendar years 2006, 2007 and 2008; and documents reflecting corporate board resolutions or filings with any state or federal regulatory agency pertaining to the account for those three years.

5

information as "confidential," which the court had entered in the action on January 5, 2010 at the request of MNE and SFS. The appointment order directed the tribal entities to pay all referee's fees.

3. *The Commissioner's Second Set of Discovery Requests*

On April 1, 2010 the Commissioner served a second set of discovery demands, which consisted of a request for production of 49 categories of documents, 26 additional requests for admission and 64 special interrogatories. MNE and SFS served responses. The parties met and conferred through an exchange of letters in August 2010, and the Commissioner thereafter filed motions to compel as to each type of discovery with the referee.[4]

The motion to compel further responses to the second set of requests for the production of documents was directed to 36 of the 49 categories in the set; the Commissioner contended those requests were all within the permissible scope of jurisdictional discovery as set forth in *Ameriloan* and were not overly broad, duplicative or burdensome. In a 28-page report dated February 23, 2011, the discovery referee recommended denying all but three of the additional document requests.

Discussing the nature of the document demands in general, the referee noted at least one request was identical to a request in the initial document demand and there were numerous other requests that were, "for all practical purposes, identical." The referee explained the Commissioner "is not entitled to make identical or substantially identical Requests for Production to those previously denied, unless [the Commissioner] makes a showing that the reason or basis on which the Requests were denied no longer exists." With respect to the appropriate scope of discovery relating to tribal sovereign immunity, the referee concluded that "business minutiae, details regarding the business operations, and the day to day operation and management of 'the arms' are irrelevant and beyond the scope of the jurisdiction issue here."

---

[4] The trial court accepted the referee's recommendation to deny MNE and SFS's motion for a protective order regarding the excessive number of requests for admission.

6

The referee recommended in her report that MNE and SFS provide responses to portions of three of the outstanding document demands: all powers of attorney executed by the Tribes (that is, by the Miami Nation of Oklahoma, the Santee Sioux Nation, MNE or SFS) appointing nontribal member Scott Tucker[5] as attorney-in-fact with respect to the payday loan businesses at issue in the enforcement action; all contracts relating to the assignment or transfer by the prior nontribal owner (a Tucker-related entity) of the payday loan businesses of any interest in those businesses to the Tribes;[6] and all contracts between the Tribes and NMS, another Tucker-related entity, with respect to management of the payday loan businesses.

In all other respects the motion to compel further responses was denied. Specifically, the referee found that six requests for all documents evidencing or reflecting any communications between the Tribes/tribal entities and various third parties concerning "the Transactions"—a defined term encompassing all loans offered and advanced to California consumers from 2002 through the date of service of the discovery demands—although more narrowly drawn than the set one requests, which had sought all communications without any subject matter at all, "are still too broad, go to the merits of the case, necessarily encompass information not relevant to jurisdiction and are beyond the scope of *Ameriloan* and federal law." Multiple requests seeking all documents describing or relating to various third parties' relationships to the Tribes were found to be substantially duplicative of previously denied requests from set one and were overbroad. The request for all documents identifying the defendants' principal place of business, including title evidence, lease agreements and utility and telephone bills, the referee

---

[5] The Commissioner alleged Tucker actually operates the payday loan businesses and their affiliation with tribal entities is a sham constructed by Tucker to protect his business activities from regulatory oversight.

[6] The referee explained, "Documents relating to acquisition of ownership of the payday loan business by the Tribes, including transfer or assignment of any interest in the entities, is directly relevant to ownership and control of the businesses and to whether they are arms of the Tribe."

reasoned, sought information that could more efficiently be obtained by interrogatories. Similarly, the request for all documents identifying each bank in which defendants had deposited monies collected from California borrowers was overbroad and burdensome. The referee noted she had previously granted a request to compel that information in a response to interrogatories.

Eight requests sought all documents regarding past and present contracts, agreements, relationships, affiliations or other arrangements between the Tribes and tribal entities and various third parties. The referee found these categories were identical to those sought in eight requests in set one, all of which had been denied by the court: "Only the redundant 'constituting,' 'referring,' 'concerning,' etc. have been omitted." Similarly, 10 requests seeking documents reflecting payments, fees or other compensation between the Tribes and certain third parties were identical to requests in the first set save for elimination of "the redundant verbiage." Two requests regarding the tribal entities use of the Internet were essentially identical to requests in the first set and "are still overbroad. While Defendants use of Internet advertising, marketing, Internet billings and loan statistics may be relevant to the merits of the case, [the Commissioner] has not demonstrated sufficiently its relevance to the jurisdictional issues." Four requests seeking "a plethora of financial records concerning Transactions" substantially duplicated requests in the first set that had been denied. The referee observed, "No new or additional basis has been shown for such extensive and burdensome discovery on the jurisdictional inquiry. Furthermore, these requests are overbroad." Several other requests were denied on substantially the same basis.

After ruling on the specific document requests, the referee addressed sanctions, noting her concern for the extent of duplication, the Commissioner's "seeming disregard for the trial judge's rulings on earlier discovery," and the amount of additional time and effort the duplication had required of the referee and the tribal entities. The referee ordered additional briefing on MNE and SFS's motion for sanctions.

8

The trial court adopted the discovery referee's recommendation and report in its entirety.  An order to that effect was entered March 14, 2011.

4.  *The Sanctions Motion and the Commissioner's Motion To Set Aside or Modify the Referee's Report*

The referee was provided further briefing on MNE and SFS's motion for monetary sanctions.  The tribal entities requested an award of more than $80,000 in attorney fees and costs.  In her report and recommendation dated May 31, 2011 the referee recommended granting the motion in part, awarding $59,410.77 in sanctions.

The referee first noted that two separate provisions authorized the award of sanctions:  section 2031.310, subdivision (h), making sanctions mandatory against a party who has unsuccessfully made or opposed a motion to compel further responses unless the court finds the unsuccessful party "acted with substantial justification or other circumstances make sanctions unjust," and section 2023.030, subdivision (a), which authorizes the imposition of monetary sanctions for misuses of the discovery process, including persisting over objection and without substantial justification in an attempt to obtain information or materials that are outside the scope of permissible discovery and employing a discovery method in a manner that causes undue burden and expense.  After summarizing her February 23, 2011 report recommending the denial in substantial part of the Commissioner's motion to compel further responses to the second set of document demands, the referee concluded the  "persistent duplication over objections and pursuit of evidence going to the merits of the case, caused unwarranted annoyance and undue burden and expense to Defendants.  The record before the Referee discloses no substantial justification for such persistent duplication, nor is the award of sanctions otherwise unjust."

The referee found substantial undue expenses were incurred as a result of the 31 (of 49) duplicative requests in the Commissioner's second set of document demands and awarded a total of slightly more than $43,000 in attorney fees and costs (rather than approximately $65,000, as requested by MNE and SFS), including fees for the sanctions motion itself.  She also recommended that MNE and SFS recover $15,700 as

reimbursement for fees paid to the referee in connection with the duplicative discovery and the sanctions motion.

The Commissioner promptly objected to the referee's sanctions report and moved to set aside or modify the report. The Commissioner argued the document requests at issue were appropriate in light of both the trial court's September 15, 2009 discovery order and our decision in *Ameriloan*, the referee had disregarded case law disfavoring sanctions in cases raising complex or novel issues, and the award of sanctions was against public policy and unjust because the motion had been partially successful in compelling additional responses and because newly discovered evidence demonstrated the relevance of the documents sought. The Commissioner also asserted the amount of sanctions recommended by the referee was unreasonable and not supported by the record.

After further briefing and a hearing, the court sustained in part and overruled in part the Commissioner's objections to the referee's report and recommendation, ruling an award of sanctions was appropriate but reducing the amount to $34,437 (including $15,700 for fees for the referee). The court ruled, "The second set of requests for production was highly duplicative of the original discovery requests which this Court determined were overly broad on September 15, 2009. Although this case may concern issues that are important and complex, propounding excessively duplicative document requests is not a complex issue. . . . [The Commissioner] did not act with substantial justification in propounding the duplicative discovery, as determined by the referee."

The Commissioner immediately appealed the sanctions order pursuant to section 904.1, subdivision (a)(12), authorizing an interlocutory appeal from an order directing payment of monetary sanctions exceeding $5,000. Following the Commissioner's appeal from the trial court's order dismissing the enforcement action under the doctrine of tribal sovereign immunity (B242644), we advised the parties the two matters may be considered concurrently for purposes of oral argument and decision.

10

**CONTENTIONS**

The Commissioner contends she was substantially justified in seeking to compel production of the documents at issue based on this court's opinion in *Ameriloan*, the complexity of the case and the undefined scope of permissible jurisdictional discovery and the fact the requests were propounded as a follow-up to other, identical requests permitted by the court. She also contends the award of sanctions was against public policy and unjust because she was partially successful in moving to compel and because additional evidence developed after the referee's report substantiated the relevance of the documents sought. Finally, she contends the amount of sanctions awarded was excessive.

**DISCUSSION**

1. *Applicable Law and Standard of Review*

If, as here, a motion to compel further responses to a request for inspection or demand for production of documents is denied, monetary sanctions "shall" be imposed unless the court finds the moving party acted "with substantial justification" or other circumstances make imposition of sanctions unjust. (§ 2031.310, subd. (h) (formerly subd. (d) [document production statute];[7] § 2023.030, subd. (a) [general sanctions statute];[8] see generally *Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245, 254, fn. 3; *Doe v. United States Swimming, Inc*. (2011) 200 Cal.App.4th 1424, 1434.)

---

[7] Section 2031.310, subdivision (h), provides, ". . . the court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel further response to a demand, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

[8] Section 2023.030, subdivision (a), provides, "The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. . . . If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it

11

The Commissioner appears to misapprehend the applicable statutory scheme, arguing the referee recommended imposition of sanctions "under her *discretionary* authority pursuant to Code of Civil Procedure section 2023.030(a)" and insisting "[n]othing in the record suggests that the Referee imposed sanctions under the court's mandatory authority prescribed in section 2031.310(h) based on a party's unsuccessfully moving to compel further responses." To be sure, the first sentence in section 2023.030, subdivision (a), which the referee quoted and which the Commissioner emphasizes, provides the court "may" impose monetary sanctions for misuses of the discovery process. But the final sentence of that subdivision expressly states, "If a monetary sanction is authorized by any provision of this title, the court *shall* impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Italics added.) Section 2031.310, subdivision (h), also quoted by the referee in her report, is such a provision mandating imposition of monetary sanctions. Accordingly, the trial court's award of sanctions was mandatory unless the Commissioner had substantial justification for filing a second, largely duplicative request for production of documents after receiving adverse rulings on earlier attempts to subpoena financial records from U.S. Bank and on the motion to compel further responses to the first set of document demands.

In reviewing an order imposing a monetary discovery sanction, the Court of Appeal in *Doe v. United States Swimming, Inc., supra*, 200 Cal.App.4th at pages 1434-1435 explained, "In a variety of similar contexts, the phrase 'substantial justification' has been understood to mean that a justification is clearly reasonable because it is well grounded in both law and fact. [Citations.] We have no reason to believe that the Legislature intended a different meaning here." (Accord, *Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, 747.) The court in *Doe* also held the burden is on the party who lost the discovery motion to establish it had acted with "substantial justification," citing,

finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

12

among other authority, Evidence Code section 500: "'Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.'" (*Doe*, at p. 1435.)

We review the trial court's sanctions order under the deferential abuse of discretion standard. (*Ellis v. Toshiba America Information Systems, Inc*. (2013) 218 Cal.App.4th 853, 878; *Diepenbrock v. Brown, supra,* 208 Cal.App.4th at p. 747.) We resolve any evidentiary conflicts most favorably to the trial court's ruling. (*Ellis*, at p. 878.)

2. *The Trial Court Acted Within Its Discretion in Awarding Sanctions*

Apart from her erroneous assertion that the award of monetary sanctions was not mandatory under section 2031.310, subdivision (h), absent a finding of substantial justification, the Commissioner attempts to defend her overbroad and duplicative second set of document demands primarily by arguing the referee and the trial court misconstrued the nature of the arm-of-the-tribe jurisdictional inquiry we directed in *Ameriloan* and improperly limited the scope of permissible discovery into the relationship between the tribal entities and Tucker and other third parties. The Commissioner's arguments fail for several related reasons.

First, in *Ameriloan*, notwithstanding the Commissioner's request that we authorize discovery into MNE and SFS's assertion that profits from the cash advance businesses benefited the Miami Tribe of Oklahoma and the Santee Sioux Nation, we expressly declined to rule on the permissible scope of any discovery when the matter returned to the trial court. (*Ameriloan, supra*, 169 Cal.App.4th at pp. 98-99.) However, to provide some guidance to the trial court and the parties, we suggested limited discovery from the tribal entities on the jurisdictional issue may be appropriate. The crucial word there was "limited": Nothing in our opinion regarding future discovery supports the Commissioner's attempt to compel responses to her sweeping document demands essentially covering every detail of the operations of MNE and SFS's payday loan businesses.

13

Second, as we discuss in *MNE, supra,* \_\_\_ Cal.App.4th \_\_\_, our mandate in *Ameriloan* to the trial court to conduct an evidentiary hearing on the arm-of-the-tribe question and to consider the *Trudgeon* criteria to determine whether the tribal entities were sufficiently related to their respective tribes to be protected by tribal immunity did not require—or authorize—comprehensive discovery into the day-to-day details of the lending businesses or the finer points of the tribal entities' contractual relationships with the third-party managers hired to operate those businesses. Carefully targeted discovery designed to develop evidence concerning actual decisionmaking authority and the nature (or absence) of tribal oversight may well have been permissible (as the trial court in fact ruled); wide-ranging demands for the production of massive quantities of financial information were not.

Third, and most importantly, even if there was some uncertainty in *Ameriloan* and other appellate decisions regarding the factors to be considered and the nature of the information relevant to resolving the arm-of-the-tribe issue, and therefore as to the proper scope of jurisdictional discovery, in ruling on the initial disputes regarding enforcement of the subpoena for financial records to U.S. Bank and the first set of document demands, the trial court was unambiguous in rejecting as overly broad the Commissioner's expansive discovery requests. Nonetheless, as the referee repeatedly noted in her report recommending denial of the motion to compel in substantial part, the Commissioner's second set of document demands substantially duplicated demands from the first set that had previously been ruled improper.[9] Without any new or additional grounds for repeating the previously rejected discovery, the Commissioner persisted in seeking "essentially wholesale discovery of all of Defendants' business records, including all

---

[9] As the referee found, the omission of redundant verbiage—using only the term "regarding," for example, instead of "regarding, constituting, referring to or concerning"—and adding to previously unlimited demands basic time and subject matter limitations that completely encompassed all events possibly relevant to the lawsuit did not constitute meaningful narrowing of the scope of the discovery demands.

14

financial records, and more." Such conduct plainly constitutes misuse of the discovery process within the meaning of section 2023.010, subdivision (a).

That the Commissioner successfully obtained an order to compel further response to three of the disputed document requests, while failing to do so as to 31 requests, does not provide substantial justification for the motion or make the award of sanctions unjust. When a discovery motion has been granted in part and denied in part, the court properly exercises its discretion to apportion sanctions or to award monetary sanctions in an amount that is "reasonable under the circumstances." (*Mattco Forge*, *Inc. v. Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1437; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 8:1189, p. 8F-76 (rev. #1, 2009).)

Similarly unpersuasive is the Commissioner's argument that her discovery requests and motion to compel were substantially justified because the trial court ultimately admitted into evidence the disputed financial records (obtained outside of the discovery process in this case) at the hearing on the motion to quash. Although allowing introduction of the evidence, however, the trial court dismissed the significance of most of that information as business minutiae, irrelevant to the arm-of-the-tribe analysis. Moreover, the court's permissive approach to the breadth of evidence presented by the Commissioner does not address the propriety of compelled disclosures from tribal entities who asserted they were not properly subject to court process in the first place. As to that question, the court had already ruled the Commissioner's discovery demands were overbroad and unduly burdensome. The decision to disregard the court's rulings on earlier discovery warranted imposition of monetary sanctions.

Finally, the Commissioner argues sanctions in this case would not serve to correct a "disobedient party" because she was merely seeking information she believed was relevant and within the scope of permissible discovery as articulated in *Ameriloan*. But intent is not an issue in evaluating the propriety of monetary sanctions for discovery misuse. (*Ellis v. Toshiba America Information Systems, Inc., supra,* 218 Cal.App.4th at

15

p. 878; *Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1286.) "'There is no requirement that misuse of the discovery process must be willful for a monetary sanction to be imposed.'" (*Clement*, at p. 878.) "'"Whenever one party's improper actions—even if not 'willful'—in seeking or resisting discovery necessitate the court's intervention in a dispute, the losing party presumptively should pay a sanction to the prevailing party . . . ."'"" (*Ellis*, at p. 878.)

        3. *The Award of Sanctions Was Not Excessive*

Even if sanctions were properly awarded, the Commissioner contends the amount determined by the trial court was excessive, challenging the quality and level of detail in the evidence presented by MNE and SFS to support their request for attorney fees and related expenses incurred as a result of the discovery misconduct. As discussed, however, we resolve all evidentiary conflicts in favor of the trial court's ruling. Detailed time sheets and billing records, although useful, are not required: "'Although a fee request ordinarily should be documented in great detail, it cannot be said . . . that the absence of time records and billing statements deprive[s] [a] trial court of substantial evidence to support an award . . . .' [Citation.] '[T]he verified time statements of [an] attorney[], as [an] officer[] of the court, are entitled to credence in the absence of a clear indication the records are erroneous.'" (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 784-785.) "The law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375; see *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269 ["there is no legal requirement that an attorney supply billing statements to support a claim for attorney fees"]; *Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 293 ["there is no legal requirement that [billing] statements be offered in evidence," and an "attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records"].)

Here, the referee in her recommendation and report to the court reduced the amount of fees sought by MNE and SFS, and the trial court reduced the figure (save only for the fees paid to the discovery referee herself) once again. No abuse of discretion occurred in setting the final monetary sanctions award. (*See Ellis v. Toshiba America Information Systems, Inc.*, *supra*, 218 Cal.App.4th at p. 889 ["'trial court is in the best position to determine the reasonable value of professional services rendered in a case before it and has broad discretion to determine the reasonable amount of an attorney fee award'"]; *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 651 ["amount to be awarded as attorney fees is left to the sound discretion of the trial court, which is in the best position to evaluate the services rendered by an attorney in his [or her] courtroom"].)

## DISPOSITION

The August 12, 2011 order imposing $34,437.50 in sanctions is affirmed. MNE and SFS are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.


ZELON, J.

17