Filed 11/25/25  Shukman v. Greene CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROMAN SHUKMAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JANNA GREENE,<br><br>    Defendant and Respondent. | H051418, H051834<br>(Santa Clara County<br>Super. Ct. No. 20PR188357) |

These two discovery appeals arise out of a dispute between two siblings over the assets of their parents, including a purportedly valuable art collection.  We consider the appeals together for purposes of decision.

In the first appeal (H051418), the trial court granted defendant and respondent Janna Greene's motion to quash a deposition subpoena on the basis that the discovery cut-off had passed, and awarded monetary sanctions of $7,500 against plaintiff and appellant Roman Shukman.  Mr. Shukman contends the court erred in awarding sanctions for several reasons, including that he was substantially justified in attempting to take a deposition because he reasonably believed the discovery cut-off had not passed.  We disagree, concluding that (1) discovery had closed before Mr. Shukman sent out his notice of deposition, and (2) the court did not abuse its discretion in awarding sanctions. We thus affirm the trial court's sanctions order.

In the second appeal (H051834), Ms. Greene asked the trial court to award sanctions, arguing that Mr. Shukman had not provided two of his expert witnesses for deposition despite his earlier agreement to do so. The court agreed with Ms. Greene and awarded monetary sanctions in the amount of $10,000. Mr. Shukman argues that he acted with substantial justification in not offering his expert witnesses for deposition at the time requested by Ms. Greene, and that circumstances present in this case make the award of monetary sanctions unjust. We conclude the trial court did not abuse its discretion in finding a misuse of discovery based on Mr. Shukman's delay and therefore affirm the trial court's sanctions order.[1]

## I.    BACKGROUND

### A.    *Allegations in Mr. Shukman's Verified Amended Petition*

This case involves the planning, administration, and distribution of the Shukman Family Revocable Trust (the Trust) dated March 4, 1999. The initial trustees and lifetime beneficiaries of the Trust were settlors Solomon Shukman and Ludmila Shukman.[2] Their children, Mr. Shukman and Ms. Greene, were the equal remainder beneficiaries of the Trust. Among the Trust assets is the art collection of Solomon, who was a Russian artist. This collection includes thousands of art pieces with a combined estimated value of $11,000,000.

In early 2013, Solomon became ill. In March 2013, Solomon and Ludmila completed a form called "Small Gift Instructions," previously given to them by their estate planning attorney. On this personal property instructions form, they gave all personal property, including the art collection, to Ms. Greene. Mr. Shukman was not

---

[1] We note that, although they had counsel in the trial court, Mr. Shukman is self-represented in both appeals and Ms. Greene is self-represented in appeal No. H051834.

[2] For the sake of clarity, we thereafter will refer to Solomon Shukman as "Solomon" and Ludmila Shukman as "Ludmila." We intend no disrespect by using their first names.

aware of the personal property instructions form at that time. He believes that his parents' signatures were forged on this form.

In January 2014, Solomon passed away. Mr. Shukman alleges that Ludmila became depressed and withdrawn, and began to depend heavily on Ms. Greene. In late 2014, Ludmila executed a financial power of attorney form, which named Ms. Greene as Ludmila's agent.

In March 2015, Ludmila executed an asset declaration in which she allocated all tangible personal property to a survivor's trust and significantly undervalued the art collection by listing "[h]ousehold furniture and misc furnishings" with a value of $22,000. A second amendment to the survivor's trust executed by Ludmila provided that all tangible personal property would go to Ms. Greene. In April 2017, Ludmila and Ms. Greene executed a third amendment to the survivor's trust, gifting to Ms. Greene the trust's interest in her parents' house and naming her the sole remainder beneficiary. Mr. Shukman alleges that Ms. Greene also changed one of their parents' bank accounts and a bank account from one of the trusts to joint accounts between Ludmila and Ms. Greene. Mr. Shukman then alleges that Ms. Greene depleted funds from these joint accounts.

Ludmila passed away in February 2019. Mr. Shukman and his family had been staying in the house with her, but after she died, Ms. Greene told them they had to leave. Mr. Shukman believes that Ms. Greene sold their parents' house in January 2022.

Mr. Shukman's Verified Amended Petition sets forth the following causes of action: (1) a request to invalidate trust amendments based on undue influence; (2) financial elder abuse; (3) breach of trust and fiduciary duty; (4) recovery of trust assets and damages for wrongful taking; (5) return of [Mr. Shukman's] tangible personal property; (6) pre-death accounting; (7) removal of trustee; (8) a request to preclude the trustee from using trust assets for the trustee's attorneys' fees and costs; and (9) a request for reallocation of trust assets as of January 25, 2014.

3

**B.** *Appeal No. H051418*

In April 2022, the trial court set the initial trial date in this case for November 28, 2022. In early November, which was after the discovery cut-off, Mr. Shukman filed an ex parte motion for inspection of the art collection by his experts and for production of personal property instructions purportedly executed by Solomon and Ludmila. In early December, the trial court granted the motion in part, ordering Ms. Greene to produce the art collection for inspection by Mr. Shukman's experts on December 13-16, 2022, and issuing a protective order regarding the conduct allowed during the inspection and the use thereafter of any photos taken of the artwork. The minute order for the hearing stated that the "[t]rial date is vacated."

Mr. Shukman, together with his wife, attorney, expert, and expert's assistant, began the inspection on December 13, 2022, but left after a couple of hours. They did not return on any of the other scheduled dates for the inspection in December. In late December 2022, in response to an ex parte motion from Ms. Greene, the trial court appointed discovery referee Steve Braccini to, among other things, guide how the parties supervised, inspected, and photographed Solomon's art collection.

Mr. Shukman asserted that the conditions for the December 13 inspection, such as lighting, space, and climate control, were inadequate. He sought reimbursement from Ms. Greene for his expenses in connection with that inspection. When informal discussions between the parties didn't resolve the dispute, Mr. Shukman filed a motion in early February 2023 for sanctions and to establish an inspection protocol. At the recommendation of the discovery referee, the trial court ordered the parties to meet and confer regarding inspection protocols. At a hearing in April, the court stated that the referee "is to come up with the protocol, the procedure, for the exhibit of the art." After

4

the parties were unable to agree on an inspection protocol, the discovery referee made his own inspection protocol recommendation.[3]

Ms. Greene retained Ed Garcia, a partner at Silicon Valley Auction Services, to facilitate the exhibition of the artwork in compliance with the recommended inspection protocol. In late February 2023, Mr. Shukman served Mr. Garcia with a subpoena / deposition notice seeking to take his deposition and requesting the production of certain documents. Mr. Shukman sought to depose Mr. Garcia regarding his personal observations of the storage and handling of the art collection. In written correspondence, the parties disputed whether Mr. Shukman had a right to take Mr. Garcia's deposition.

In mid-March 2023, Ms. Greene filed a motion to quash the deposition notice for Mr. Garcia and for a protective order, which Mr. Shukman opposed. The discovery referee issued a report on the motion to quash in which he recommended that (1) the motion should be granted and (2) monetary sanctions be awarded to Ms. Greene in the amount requested of $7,500. The trial court agreed with the discovery referee, orally granting the motion at an April 19, 2023 hearing and awarding $7,500 in monetary sanctions. The trial court issued a corresponding written order in late June 2023.

Mr. Shukman timely appealed this order.

**C.    *Appeal No. H051834***

In email correspondence between the parties' attorneys in 2022 regarding the art inspection, Mr. Shukman's counsel stated he and Mr. Shukman would agree to produce their experts "for deposition . . . following completion of the court-ordered inspection of the artwork." The inspection eventually took place on July 10-13, 2023, and was conducted by Mr. Shukman's expert, Leon Weinstein. Shortly after the inspection, Ms. Greene served deposition subpoenas to take the depositions of two of Mr. Shukman's

---

[3] It is not clear from the record whether the trial court adopted the referee's recommendation.

5

disclosed experts, Mr. Weinstein and Peter Frank, on August 28 and 29, 2023, respectively.

Despite the earlier agreement to produce Mr. Weinstein and Mr. Frank for deposition, Mr. Shukman asserted in an August 2023 letter to Ms. Greene's counsel that discovery was now closed and that Ms. Greene was precluded under judicial estoppel principles from now arguing that discovery remained open for the purpose of the experts' deposition. However, Mr. Shukman's counsel stated that he would "send Mr. Weinstein's report to you once it has been completed and we will not object to the expert depositions of Mr. Weinstein and Mr. Frank going forward no earlier than 50 days before the date set for trial, and to have the expert discovery cutoff governed by the new trial date. While we expect Mr. Weinstein to complete his report by mid-September, we cannot guarantee that, and we will vigorously defend against any motion to compel their depositions should you proceed with filing one."

In September 2023, Ms. Greene filed a motion for evidentiary and monetary sanctions against Mr. Shukman for "his refusal to produce his experts for their depositions and to produce their reports and other writings and for monetary sanctions against him for reasonable costs and expenses including attorney's fees." Ms. Greene sought to preclude the testimony of Mr. Weinstein and Mr. Frank at trial, and also requested monetary sanctions in the amount of $10,000.

Mr. Shukman opposed the motion, arguing that Mr. Weinstein's report had taken longer to complete than originally anticipated due to the conditions of the inspection and Mr. Weinstein's inability to work during the Jewish High Holidays, but that the 341-page report had been produced in early November 2023, and dates for the expert depositions had been offered for December. Mr. Shukman asserted the motion should be denied because he had already produced the report and offered his experts for deposition, which he contended made the motion moot, and because the trial court had determined discovery was closed. He argued further that, although he was not refusing to produce

6

his experts for deposition, Ms. Greene was judicially estopped from deposing them. He also argued that nonmonetary sanctions in the absence of a violation of a prior court order should only be issued in exceptional circumstances, and that Ms. Greene had suffered no prejudice because no trial date had yet been set.

The trial court heard the motion on November 29, 2023. In its December 7 written order on the motion, the court acknowledged that it had allowed Mr. Shukman's experts to inspect the art collection past the discovery cut-off "due to the importance of the valuation of the art" and stated that "[it] would be unfair to prevent [Ms. Greene] from deposing [Mr. Shukman's] experts to prepare for trial because the discovery cutoff has passed when the experts did not inspect the art and prepare their reports until well after that time." The court stated that it previously had not allowed Mr. Garcia's deposition to proceed because the discovery cutoff had passed, and while the court had reopened discovery in other ways, it did so "solely for the purposes of allowing [Mr. Shukman's] experts to inspect the art." The court stated that Mr. Shukman's counsel had "clearly agreed to produce [Mr. Shukman's] experts for deposition after the inspection of the artwork," but then refused to do so.

The court hence granted the motion to compel and held that Ms. Greene was entitled to depose Mr. Shukman's experts. The court denied evidentiary sanctions, but awarded monetary sanctions against Mr. Shukman in the amount of $10,000.

Mr. Shukman timely appealed this order.

## II.    DISCUSSION

### A.    *Appealability*

As a preliminary matter, we address the appealability of the orders on appeal. With regard to appeal No. H051418, Ms. Greene argues that "only the sanctions portion of the order is appealable; the underlying discovery ruling is interlocutory and not appealable."

7

"A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment. [Citations.]" (*Griset v. Fair Political Practices Com'n* (2001) 25 Cal.4th 688, 696.) "A trial court's order is appealable when it is made so by statute. [Citations.]" (*Ibid.*) Code of Civil Procedure section 904.1[4] provides that an order directing payment of monetary sanctions in an amount exceeding $5,000 is appealable. (*Id.*, subd. (a)(12).)

By contrast, an order on a motion to quash a subpoena is not, by itself, an appealable order. (*Fox Johns Lazar Pekin & Wexler, APC v. Superior Court* (2013) 219 Cal.App.4th 1210, 1216.) Generally, "[a]n attempt to appeal from a nonappealable order does not give this court jurisdiction or authority to review it.' [Citation.]" (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432 (*United States Swimming*).) An exception has been found, however, when a nonappealable discovery order is based on the same conduct as, and "inextricably intertwined" with an appealable monetary sanctions order. (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 276.) Under such circumstances, it may be necessary to examine the nonappealable order to reach a conclusion as to the propriety of the monetary sanctions.

Mr. Shukman makes two arguments in connection with the monetary sanctions order in appeal No. H051418: (1) his attempt to take Mr. Garcia's deposition was made with substantial justification; and (2) circumstances present in this case make the monetary sanctions award unjust. Mr. Shukman's first argument is based on his contention that he reasonably believed there was no applicable discovery cut-off once the trial court had vacated the order setting the original trial date. At the hearing on the motion to quash concerning Mr. Garcia's deposition, the trial court expressly found there was still an applicable discovery cut-off date, and that it had passed. This was a chief reason for why the trial court granted Ms. Greene's motion to quash.

---

[4] All future undesignated statutory references are to the Code of Civil Procedure.

Thus, the conduct that resulted in the monetary sanctions (i.e., noticing a deposition past a discovery cut-off) is the same conduct underlying the motion to quash and the trial court's ruling on that motion. A determination of whether monetary sanctions should have been awarded necessarily relies on whether Mr. Shukman was substantially justified in pursuing the deposition and opposing the motion to quash. Therefore, we will address the basis for the order on the motion to quash to the extent it bears on whether Mr. Shukman was substantially justified in attempting to take Mr. Garcia's deposition, based on Mr. Shukman's belief that there no longer was an applicable discovery cut-off.

As for appeal No. H051834, that appeal concerns only the award of monetary sanctions over $5,000, which is by itself appealable. (§ 904.1, subd. (a)(12).)

**B.** *Legal Principles*

Under sections 2023.010 and 2023.030, a trial court has the authority to impose monetary sanctions for a pattern of discovery abuse. (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 51.) "The trial court has broad discretion in deciding whether to impose sanctions and in setting the amount of monetary sanctions. [Citations.]" (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*); see also *Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 73 [trial court has broad discretion in selecting sanctions and will be reversed only for the arbitrary, capricious, or whimsical exercise of that discretion].)

We review discovery orders for abuse of discretion. (*Cornerstone*, *supra*, 56 Cal.App.5th at p. 789.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712,

9

fns. omitted.)  "To the extent that reviewing the sanction order requires us to construe the applicable discovery statutes, we do so de novo, without regard to the trial court's ruling or reasoning.  [Citation.]"  (*Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 401 (*Sinaiko*).)  "We view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it.  [Citation.]"  (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 765.)

## C.    *Appeal No. H051418*

As is relevant here, a "court shall impose a monetary sanction . . . against any party, person, or attorney who unsuccessfully makes or opposes a motion for a protective order, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2025.420, subd. (h).)  Mr. Shukman argues the trial court's order granting the motion to quash and for a protective order was in error because:  (1) the discovery cut-off had not passed; (2) the motion to quash did not comply with the separate statement requirement of Cal. Rules of Court, rule 3.1345(a); and (3) he sought highly relevant and discoverable information.  He therefore contends that the award of monetary sanctions should be reversed because his attempt to take Mr. Garcia's deposition was made with substantial justification.  As we explain below, we conclude that (1) the discovery cut-off had passed and (2) the trial court did not abuse its discretion in awarding monetary sanctions.[5]

---

[5] Our conclusion that the discovery cut-off had passed is dispositive and we do not reach Mr. Shukman's other arguments regarding substantial justification.  To the extent, however, that Mr. Shukman contends Ms. Greene's motion to quash should have been denied as procedurally defective for failing to include a separate statement, we would not reverse on this basis.  While the absence of a separate statement when required by California Rules of Court, rule 3.1345, authorizes a trial court to deny a discovery motion, it does not limit the court's discretion to grant the motion.  (See *Sinaiko, supra,* 148 Cal.App.4th at p. 409, fn. 14.)

Under the Civil Discovery Act, "any party shall be entitled as a matter of right to complete discovery proceedings on or before the 30th day, and to have motions concerning discovery heard on or before the 15th day, before the date initially set for the trial of the action." (§ 2024.020, subd. (a).) With limited exceptions, "a continuance or postponement of the trial date does not operate to reopen discovery proceedings." (*Id.*, subd. (b).)

Here, the trial court set an initial trial date of November 28, 2022, which meant the discovery cut-off would be at the end of October 2022. Yet Mr. Shukman served a notice of deposition for Mr. Garcia in February 2023, well past the discovery cut-off.

As support for his deposition notice, Mr. Shukman points to the trial court's November 18, 2022 minute order, which stated that the November 28 "[t]rial date is vacated." Quoting *Bulmash v. Davis* (1979) 24 Cal.3d 691 (*Bulmash*), he argues that the effect of a "vacated" order is that "the status of the parties that existed prior to the judgment is restored and the situation then prevailing is the same as though the order or judgment had never been made. [Citation.]" (*Bulmash*, at p. 697.) Mr. Shukman cites *Mark Briggs and Associates. v. Kinestar* (1983) 143 Cal.App.3d 483 (*Briggs*) for the same proposition. But neither *Bulmash* nor *Briggs* concerned discovery or a vacated trial date. Rather, both cases discussed the effect of vacating a judgment. (*Bulmash*, at p. 697; *Briggs*, at p. 489.) These cases are therefore inapposite. (*People v. Hatt* (2018) 20 Cal.App.5th 321, 326 ["A case is not authority for a proposition not considered."].)

Mr. Shukman's argument relies largely on a supposed distinction between the trial court's use of the word "vacated," as opposed to the words "continuance" and "postponement" that are in section 2024.020, subdivision (b). When interpreting a statute, our ultimate objective is " 'to ascertain the Legislature's intent.' " (*Medical Bd. of California v. Superior Court* (2001) 88 Cal.App.4th 1001, 1013.) We begin by examining the language of the statute, but "it is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences

11

that the Legislature did not intend.  To this extent, therefore, intent prevails over the letter of the law. . . ."  (*In re Michele D.* (2002) 29 Cal.4th 600, 606.)

We conclude that in the context of the discovery cut-off statute, there is no material difference between the words "vacate" and "postpone."  "By referring to the date 'initially' set for trial or the 'initial' trial date, the Legislature clearly inferred subsequent, continued, new, rescheduled, or other 'non-initial' trial dates might be set but the controlling date for purposes of discovery cut off is the initial, i.e., first trial date set, not a date which might be set later."  (*Beverly Hospital v. Superior Court* (1993) 19 Cal.App.4th 1289, 1292-1293 (*Beverly Hospital*).)  Imposing a set cut-off date serves the purpose of expediting trial preparation and preventing delay, and " 'to be effective the cutoff date must be firm or some litigants will manipulate the proceedings to avoid the cutoff date.' "  (*Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245, 251-252; *Beverly Hospital*, *supra*, 19 Cal.App.4th at p. 1295.)  Under the statute, it is intended that the initial trial date will control and, in this sense, whether a trial date is "vacated" or "postponed," the end result is the same:  a new, later trial date eventually will be set.[6]

Although the trial court did not set a new date for trial after vacating the initial trial date, no reasonable person would conclude that no other trial date would ever be set in this case.  Indeed, Mr. Shukman concedes this point:  "It is true after vacating the order setting the initial trial date, the court would have to eventually set a new trial date."  Consequently, in the same manner as a postponement of trial, the court's vacating of the initial trial date did not "operate to reopen discovery proceedings."  (§ 2024.020, subd. (b).)

---

[6] We interpret "postponement" as not requiring a new trial date be immediately set.  Doing otherwise would render it superfluous, as then a "postponement" would be no different than a "continuance."  (See *Dix v. Superior Court* (1991) 53 Cal.3d 442, 459 ["Where reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary.  [Citations.]"].)

We acknowledge that the trial judge granted in part Mr. Shukman's motion to compel inspection of the art collection on November 18, 2022, the same date on which the court vacated the trial date. The discovery cut-off had passed by this point. But a court has the power to "grant leave to complete discovery proceedings, or to have a motion concerning discovery heard, closer to the initial trial date. . . ." (§ 2024.050, subd. (a).) The record does not reflect that the trial court intended to completely reopen discovery by virtue of granting Mr. Shukman's motion to compel inspection of the art collection. At the hearing on the motion to quash, the court confirmed that "[i]t was the Court's intent not to reopen discovery. This matter was set for trial and we were close to trial. [Ms. Greene's attorney] was in trial in another county and was prepared to try this case but for this Court granting Mr. Shukman's motion to allow a viewing of an exhibit. It was for that limited purpose only. I was in no way intending to open discovery for all purposes." We note that the trial court's order states nothing about generally opening discovery or changing the general discovery cut-off date. Given well-established case law regarding discovery deadlines, it would not be reasonable to conclude the trial court reopened discovery for all purposes by reopening it for one purpose.

Mr. Shukman points out that he had served other subpoenas for discovery past the discovery cut-off and that Ms. Greene did not object. But this does not obviate the requirement for a motion requesting that discovery be reopened. Moreover, these other discovery requests were not before the trial court when it ruled on the motion to quash. Mr. Shukman hence has not established that he had substantial justification in seeking to take Mr. Garcia's deposition after the applicable discovery cut-off had passed.

Mr. Shukman also contends the award of monetary sanctions should be reversed because circumstances present in this case make it unjust. He asserts that the imposition of $7,500 in sanctions is highly unreasonable in light of his financial condition.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the

13

basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.]" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Additionally, "[t]he doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.]" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

Under these two related doctrines, we must infer that the trial court made a factual finding that Mr. Shukman could afford the monetary sanctions in this instance such that the imposition of the sanctions would not be unjust. We note there was no evidence before the trial court as to Mr. Shukman's financial situation.[7] In addition, at the April 19, 2023 motion to quash hearing, Mr. Shukman's counsel did not argue that Mr. Shukman could not afford sanctions. We therefore see no error in the court's factual finding.

Accordingly, given the trial court's broad discretion to impose sanctions, we cannot state that the trial court's decision to award monetary sanctions was arbitrary or capricious. (See *Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881-882 [even under circumstances where an appellate court disagrees with the trial court's conclusion, "if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court"].) We therefore affirm the court's monetary sanctions order.

**D.** *Appeal No. H051834*

Mr. Shukman argues that the trial court abused its discretion by awarding monetary sanctions against him in connection with Ms. Greene's September 25, 2023 motion for evidentiary and monetary sanctions. Specifically, Mr. Shukman argues that:

---

[7] In connection with a motion for sanctions filed by Mr. Shukman in February 2023, he filed a declaration in which he stated that his business and income "suffered significantly since the COVID-19 [p]andemic began and as a result of the Los Angeles civil unrest of June 2020." This statement, made as part of a different motion, does not establish Mr. Shukman could not afford to pay the sanctions ordered here by the court.

14

(1) he acted with substantial justification in not offering his expert witnesses for deposition at the time requested by Ms. Greene; and (2) circumstances present in this case make the award of sanctions unjust.[8]  For the reasons explained below, we disagree.[9]

The trial court ordered monetary sanctions for a misuse of the discovery process by Mr. Shukman, based on a finding that his counsel had "clearly agreed to produce [Mr. Shukman's] experts for deposition after the inspection of the artwork," but then refused to do so.  "California law authorizes a range of penalties for conduct amounting to 'misuse of the discovery process, [citations]' " including monetary sanctions, which must be imposed unless the court finds "the person subject to the sanction either acted with substantial justification or imposition of sanctions would be unjust under the circumstances."  (*Cornerstone*, *supra*, 56 Cal.App.5th at p. 790.)  No explicit conclusion by the trial court regarding the applicability of these exceptions is required, as a finding of their nonexistence is implied in an award of monetary sanctions.  (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 294.)

Mr. Shukman contends he had substantial justification for not offering his expert witnesses for deposition because he was waiting until after one of his experts, Mr. Weinstein, completed his report on the inspection.  He asserts he never refused to offer his experts for depositions, and that he produced Mr. Weinstein's report immediately

---

[8] Ms. Greene has not filed a respondent's brief in appeal No. H051834, instead filing a document in which she states she is relying on the presumption of correctness.  In accordance with California Rules of Court, rule 8.220(a)(2), we will "decide the appeal on the record, the opening brief, and any oral argument by the appellant."

[9] In the trial court, Mr. Shukman argued the motion was moot because he produced Mr. Weinstein's report and offered the experts for deposition.  He does not raise this argument on appeal, appearing to abandon it.  We note, however, that at the time the motion was heard, the experts had not yet been deposed.  Moreover, a court may award sanctions for failure to provide discovery even if "the requested discovery was provided to the moving party after the motion was filed."  (Cal. Rules of Court, rule 3.1348(a).)

15

upon its completion, but that completion took longer than anticipated due to the conditions of the inspection.

"[T]he phrase 'substantial justification' has been understood to mean that a justification is clearly reasonable because it is well grounded in both law and fact. [Citations.]" (*United States Swimming*, *supra*, 200 Cal.App.4th at p. 1434.) When deciding whether a party had substantial justification for its conduct in connection with discovery, a trial court can "look at the whole picture of the discovery dispute." (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1292.)

In considering whether to grant sanctions in this case, the trial court considered the overall history of discovery between the parties. At the sanctions motion hearing, the court stated: "I am regretting, quite honestly, my ruling in allowing discovery to continue to allow [Mr. Shukman] to examine and look and photograph all of the artwork. There has been so much delay to the dissatisfaction and frustration of this Court that I had to appoint a special discovery referee, Mr. Braccini." In its sanctions order, the trial court noted there had been "countless delays" in the case.

A pattern of delay can constitute a misuse of discovery. (*Atlas v. Davidyan* (2025) 113 Cal.App.5th 1086, 1096.) Here, after the trial court granted Mr. Shukman's motion to inspect the art collection, Mr. Shukman, his wife, his attorneys, and his experts began the inspection on December 13, 2022. Thereafter, however, Mr. Shukman and his team left without inspecting the artwork because Mr. Shukman contended the "space was unworkable" due to the temperature, lighting, and size of the location. The discovery referee observed that the court's order "did not require the specified space, heating, and lighting requirements" set forth by Mr. Shukman, and that Mr. Shukman never raised any such concerns before the issuance of the court's order. Ultimately, the parties' inability to agree on an inspection protocol necessitated that the referee make a recommendation regarding the protocol, and the inspection did not take place until July 2023. This is one example of delay that the trial court reasonably could have attributed to Mr. Shukman.

16

Further, Ms. Greene noticed the depositions of Mr. Shukman's experts, Mr. Weinstein and Mr. Frank, for August 2023, but as of the time the trial court issued its sanctions order in December 2023, Mr. Shukman had not provided his experts for deposition even though he stated in a November 30, 2022, email during the parties' negotiations that he would agree to "produce [his] experts for deposition . . . following completion of the court-ordered inspection of the artwork." In correspondence with Ms. Greene's counsel, Mr. Shukman's attorney asserted that discovery was closed, but stated that "if you will agree to conduct those depositions no earlier than 50 days before the date set for trial, and to have the expert discovery cutoff governed by the new trial date, we will not object to those depositions going forward." But as Mr. Shukman acknowledges, there was no new trial date set at that time. An acceptance of this "offer" therefore would have caused a further delay in providing the requested depositions.

Mr. Shukman contends he was justified in not offering his expert witnesses for deposition because he was waiting until after Mr. Weinstein completed his report. The trial court acknowledged, as do we, that Mr. Shukman's experts needed a reasonable amount of time following the July 2023 inspection to be prepared for deposition. But Mr. Shukman did not produce Mr. Weinstein's report until November 2023 and did not make Mr. Weinstein and Mr. Frank available for depositions until December 2023. It therefore was not an abuse of discretion for the trial court to have implicitly found that this delay between July 2023 and December 2023 was not justified and that Mr. Shukman was largely responsible for it.

Mr. Shukman also contends other circumstances in this case make the imposition of sanctions unjust. He makes two arguments: (1) the trial court could not find Mr. Shukman misused the discovery process by failing to pay the prior $7,500 monetary sanctions order while the order was on appeal; and (2) Ms. Greene either waived or was judicially estopped from attempting to compel the depositions when she previously took the opposite position by claiming discovery was closed.

First, the trial court did not order monetary sanctions based on Mr. Shukman's failure to pay the earlier monetary sanctions award of $7,500. The court noted specifically that "[Ms. Greene] is not asking the court to enforce its order that [Mr. Shukman] pay her $7,500 in connection with the motion to quash Mr. Garcia's deposition subpoena." Rather, the court found a misuse of the discovery process because "[Mr. Shukman's] counsel clearly agreed to produce [Mr. Shukman's] experts for deposition after the inspection of the artwork," but didn't do so promptly. Mr. Shukman's first argument is inapposite.

Second, the doctrine of judicial estoppel "precludes a party from obtaining an advantage by asserting one position, and then seeking a second advantage by asserting an incompatible position." (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 448-449.) The doctrine generally applies when: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.) However, "numerous decisions have made clear that judicial estoppel is *an equitable doctrine*, and its application, even where all necessary elements are present, is discretionary." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422.) "The doctrine should be applied with caution and limited to egregious circumstances. [Citations.]" (*Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 170.)

At least one element of judicial estoppel is not present here: Ms. Greene did not take two positions that are "totally inconsistent." Mr. Shukman portrays Ms. Greene's position in connection with his prior motions for discovery after the cut-off—that discovery was closed—as inconsistent with her request to depose Mr. Shukman's experts. But Ms. Greene was not arguing that discovery generally should have been reopened.

18

Rather, she was arguing, just as Mr. Shukman had done successfully earlier in the case, that while discovery was generally closed, limited discovery on discrete subjects should go forward.

This is not a situation in which Ms. Greene failed to take the depositions of the experts before the discovery cut-off due to some action or inaction on her part. It would have been useless for Ms. Greene to depose Mr. Shukman's experts before the inspection. Mr. Shukman should not have been surprised that the trial court would conclude Ms. Greene should have the right to depose the experts following the inspection, but before trial. (See *Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 474 [allowing the presentation of witnesses at trial by one party without allowing the opposing parties to depose the witnesses would have been unfair].) Consequently, the trial court did not abuse its discretion in declining to find that judicial estoppel should preclude Ms. Greene from deposing Mr. Shukman's experts.

Finally, the trial court concluded that Mr. Shukman's conduct was not egregious enough to warrant evidentiary sanctions, but that monetary sanctions should be imposed for Mr. Shukman's misuse of discovery. On this record, we cannot state that the trial court abused its discretion by awarding monetary sanctions.

### III.   DISPOSITION

The trial court's orders for monetary sanctions are affirmed. Costs on both appeals are awarded to Ms. Greene. (Cal. Rules of Court, rule 8.278(a)(1).)

19

KULKARNI, J.*

WE CONCUR:

GREENWOOD, P. J.

LIE, J.

*Shukman v. Greene*

H051418, H051834

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.